IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Charles Faison, )<br>                Plaintiff, )<br>                     )<br>     vs. )<br>                   )<br>Michael J. Astrue, )<br>Commissioner of Social Security, )<br>                   )<br>           Defendant. )<br>_____) | Civil Action No. 6:10-2375-RMG-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This case is before the court for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) DSC, concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

The plaintiff filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits on April 12, 2007, respectively, alleging that he became unable to work on February 25, 2007. The applications were denied initially and on reconsideration by the Social Security Administration. On October 25, 2007, the plaintiff requested a hearing. At the hearing, the plaintiff, through counsel, amended his application to request a closed period of disability from February 25, 2007, to June 1, 2008 (Tr. 38).

---

[1]A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

The administrative law judge ("ALJ"), before whom the plaintiff and Carroll H. Crawford, an impartial vocational expert, appeared on June 24, 2009, considered the case *de novo*, and on September 23, 2009, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended.   The ALJ's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on July 19, 2010.  The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> 1.  The claimant meets the insured status requirements of the Social Security Act through June 30, 2010.
>
> 2.  The claimant has not engaged in substantial gainful activity since February 25, 2007, the alleged onset date. (20 C.F.R. §§ 404.1571, and 416.971 *et seq.*)
>
> 3.  The claimant has the following severe impairments:  below the knee amputation with prosthesis and diabetic neuropathy (20 C.F.R. §§ 404.1520(c) and 416.920(c)).
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).
>
> 5.  After careful consideration of the entire record, I find  that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except the claimant can perform tasks requiring frequent, but not constant bilateral hand and finger manipulations.

2

6.  The claimant is unable to perform any past relevant work. (20 C.F.R. §§ 404.1565 and 416.965).

7.  The claimant was born October 2, 1960 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 C.F.R. §§ 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569a, 416.969 and 416.969(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from January 25, 2007 through the date of this decision (20 C.F.R. § 404.1520(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment that prevents past relevant work, and (5) has an impairment that prevents him from doing substantial gainful employment. 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.* §404.1520(a)(4).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can

4

perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. See *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citation omitted).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings and that his conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **EVIDENCE PRESENTED**

In February 2007, the plaintiff burned his left foot when he propped it on a heater and could not feel the heat. He did not seek treatment for it, and he subsequently developed an infection (Tr. 287). On March 17, 2007, the plaintiff underwent a left below-

knee amputation. The hospital discharge summary notes that the plaintiff had a long history of very poorly controlled diabetes mellitus and advanced neuropathy secondary to extreme medical noncompliance. He was discharged from the hospital on March 23, 2007, with arrangements for home health treatment (Tr. 284-88).

The plaintiff was readmitted to the hospital March 24, 2007, through April 10, 2007. He reported severe pain after being released from the hospital the day prior following shunt procedure for priapism. During his admission, the plaintiff had a consultation for edema on March 25, 2007. Physical examination revealed that the stump on his left leg was swollen and edematous, and there was 1 to 2+ pitting edema on his right leg. Aggressive diuresis was planned. An echocardiogram on March 28, 2007, revealed mild concentric left ventricular hypertrophy. Lower venous studies did not show evidence of DVT (Tr. 535). The plaintiff's discharge diagnosis was priapism, insulin-dependent diabetes mellitus, peripheral edema with associated hypoalbuminemia, status-post below the knee amputation, severe neuropathy, probably diabetic related, and hypothyroidism (Tr. 280-83, 534-36, 540-43).

The plaintiff started physical therapy on April 12, 2007, for gait training, transfers, safety instructions, therapeutic exercises, and balance activities (Tr. 414). On May 3, 2007, the plaintiff's physical therapy was discontinued as he was "independent in all functional mobility with walker" (Tr. 407).

On June 15, 2007, Scott Thompson, a certified prosthetist, fit the plaintiff with a below-knee prosthesis. Mr. Thompson observed that the plaintiff ambulated comfortably. He advised the plaintiff to be very careful and to begin using the prosthesis in home for a few days (Tr. 509).

Mr. Thompson followed-up with the plaintiff on July 30, 2007, and observed that the plaintiff was ambulating comfortably with a walker. The plaintiff said he did not need therapy (Tr. 513).

6

On August 9, 2007, Pranay Patel, M.D., performed a consultative examination of the plaintiff in connection with his application for benefits.  The plaintiff's main complaints were diabetes mellitus, hypertension, left below knee amputation, heart disease, peripheral neuropathy, and hypothyroidism.  The plaintiff reported he used a walker to ambulate.  Dr. Patel observed the plaintiff had a prosthesis in place. Dr. Patel concluded that, because the plaintiff used a walker to help him walk, "this significantly disables him to do any type of work and definitely needs (sic) disability. . . and he cannot be trained for any work because of his amputation" (Tr. 516-18).

On August 22, 2007, Seham El-Ibiary, M.D., a State agency physician, reviewed the plaintiff's medical record and concluded that within 12 months of the plaintiff's alleged onset date (February 25, 2008), the plaintiff would be able to lift and carry 10 pounds frequently and 20 pounds occasionally; stand and/or walk about six hours in an eight-hour workday; sit about six hours in an eight-hour workday; frequently climb ramps and stairs, stoop, kneel, and crouch; occasionally climb ladders, ropes, and scaffolds, balance, and crawl; and should avoid concentrated exposure to hazards (Tr. 520-27).  Dr. El-Ibiary concluded the plaintiff would have to restrict his use of his left leg and could frequently use his right leg (Tr. 521).

A second Physical Residual Functional Capacity Assessment was completed by Dale Van Slooten, M.D., a non-examining State agency physician, on October 9, 2007.  Dr. Van Slooten's findings were identical to Dr. El-Ibiary's findings with the exception of finding that Faison could never climb ladder/rope/scaffolds (Tr. 644-51).

On November 13, 2007, William F. Price, M.D., from St. Luke's Free Medical Clinic, completed a form for the plaintiff stating that the plaintiff was unable to work because of his amputation, but he thought that the plaintiff would benefit from vocational rehabilitation services (Tr. 652).

7

Treatment notes from Dr. Price dated March 11, 2008, state that the plaintiff complained of edema in his right leg. The plaintiff had tried to increase his activity to reduce the swelling. Dr. Price noted that the plaintiff's edema could be related to his medications (Tr. 672).

On June 13, 2008, physical therapist Barbara Jolley noted that Mr. Thompson saw the plaintiff for the first time in eight months for prosthetic adjustments. Ms. Jolly observed that a lot of adjustments were needed to the prosthesis and noted that it was common for a first prosthetic socket to become too large within the first six months. She recommended the plaintiff have a socket replacement or an entirely new prosthesis (Tr. 692).

The plaintiff participated in a comprehensive vocational evaluation in May and June 2008. The vocational evaluation discharge summary dated June 20, 2008, states that the plaintiff expressed a desire to return to work as a forklift operator, but this job was rated at a higher work level than his recommended sedentary to light level of work. The plaintiff was able to tolerate a full day of activity for four weeks at the sedentary to light work level, and needed accommodations for no kneeling, crouching, climbing, and crawling with frequent position changes between sitting, standing, and walking. The plaintiff was encouraged to continue with job placement assistance and continue his regular exercise program (Tr. 686). A nursing note dated that same day authored by Mary Burnett, LPN, states that the plaintiff had a prosthesis and walked with a cane, but he was independent in his activities of daily living (Tr. 688). A physical therapy note by Julie Jackman, also dated June 20, 2008, states that the plaintiff was able to work at the sedentary to light work level, but might be able to work at a higher level with a newer prosthesis. Ms. Jackman noted the plaintiff also needed accommodations for no kneeling, crouching, climbing, or crawling; occasional stooping to pick up light objects from the floor, and frequent changing of positions. She observed that the plaintiff had "some decreased standing balance due

8

to the prosthesis, but he compensates well. . . [the plaintiff] occasionally uses a straight cane" (Tr. 691).

On September 12, 2008, James T. Hughes, M.D. provided a letter report regarding the plaintiff. Dr. Hughes treated him at the request of St. Luke's Free Medical Clinic for a right foot ulcer. The plaintiff reported having callouses for years and having the feeling like he may have stepped on something. Physical examination revealed pitting edema in his right leg from the knee to ankle, with his foot seemingly less swollen. Dr. Hughes stated the findings were consistent with chronic venous stasis. Dr. Hughes performed a "repair" of the callous. Dr. Hughes advised the plaintiff to "see if St. Luke's would refer him to a podiatrist or wound care center or other place for a fitted shoe." Dr. Hughes discussed the importance of daily foot examination and care, as well as the importance of inspecting for signs of infection (Tr. 685).

At the June 24, 2009 hearing before the ALJ, the plaintiff testified that after his left leg was amputated, he did not get a prosthetic leg for a couple of months. During that time, he used a wheelchair (Tr. 40).  The plaintiff testified that he had problems with the first prosthetic leg because of stump issues.  He was fitted for his second prosthetic leg in 2009 (Tr. 41).  The plaintiff reported that he still had problems with this new prosthesis and could stand for only three to five hours.  He indicated that he could stand for a shorter period of time when he received his first prosthesis in 2007 (Tr. 42).

Vocational expert Carroll Crawford also testified at the June 2009 hearing. The ALJ asked Mr. Crawford to assume a hypothetical individual of the plaintiff's age, education, and work experience, who was limited to sedentary work with no concentrated exposure to dangerous machinery or unprotected heights (Tr. 53).  Mr. Crawford testified that such an individual could not perform the plaintiff's past relevant work but could perform

the representative unskilled sedentary[2] jobs of assembler (5,000 jobs  locally and 350,000 nationwide), bench hand (1,200 jobs locally and 84,000 nationwide) and surveillance systems monitor (1,230 jobs locally and 78,000 jobs nationwide) (Tr. 53-54).

The ALJ issued her decision on September 23, 2009.  The plaintiff's counsel thereafter submitted the following evidence to the Appeals Council:  On January 10, 2010, the plaintiff was admitted to Spartanburg Regional Medical Center for a right foot infection with pain. The admitting doctor noted that he had had problems with his right foot for a week (Tr. 704). Physical examination revealed 2+ edema in the right lower extremity.  The plaintiff's diagnosis was gas gangrene of the right foot with cellulitis of the leg. It was also noted that he had the following diagnoses: diabetes mellitus, peripheral vascular disease, peripheral neuropathy, chronic renal insufficiency, severe protein malnutrition, hypothyroidism, surgically, hypertension, and medical noncompliance. A partial right foot amputation was performed.  The plaintiff was discharged on January 22, 2010 (Tr. 700-716).  The Appeals Council considered this evidence and found the information did not provide a basis for changing the ALJ's decision.  The Appeals Council noted that the new evidence concerned a later time period than the ALJ's decision, which considered whether the plaintiff was disabled beginning on or before September 23, 2009.  The Appeals Council informed the plaintiff that if he wanted the Social Security Administration to consider whether he was disabled after September 23, 2009, he would need to file a new application (Tr. 1-2).

## ANALYSIS

The plaintiff seeks a closed period of disability from February 25, 2007, through June 1, 2008.  The plaintiff was 46 years old on the date he alleges he became

---

[2]  See 20 C.F.R. § 404.156(b)(light work definition).

disabled.  He has a high school education and past work experience as a custodian, roofer, and warehouse worker.

The ALJ found that the plaintiff's diabetic neuropathy and below the knee amputation were severe impairments, but the plaintiff retained the residual functional capacity ("RFC") to perform sedentary work except the plaintiff could perform tasks requiring frequent, but not constant, bilateral hand and finger manipulation.  The ALJ found the plaintiff's limitations would preclude his past relevant work, but further found that there are jobs that exist in significant numbers in the national economy that he can perform, such as assembler, bench hand, and surveillance monitor.  The plaintiff argues that the ALJ's decision is not supported by substantial evidence and the ALJ erred by:  (1)  failing to consider Listings 1.05 and 9.08 at the third step of the sequential evaluation; (2)  failing to properly evaluate the opinion evidence; (3)  failing to properly evaluate his credibility; (4) failing to properly evaluate his RFC; and (5)  failing to comply with Social Security Ruling ("SSR") 00-4p.

### *Listing of Impairments*

The plaintiff first argues that the ALJ erred by finding that his impairments did not meet or equal one of the listed impairments.  The ALJ found as follows:

> I find none of the musculoskeletal listings under section 1.00 and neurological listings under section 11.00 are at issue in this case.  Claimant has no neurological involvement or joint dysfunction.  Furthermore, no other listings are implicated in this case.

(Tr. 14).  The plaintiff contends that the ALJ should have specifically considered Listings 1.05 (Amputation) and 9.08 (Diabetes mellitus).  This court agrees.

The regulations state that upon a showing of a listed impairment of sufficient duration, "we will find you disabled without considering your age, education, and work experience." 20 C.F.R. § 404.1520(d).  A listing analysis includes identifying the relevant

listed impairments and comparing the criteria with the evidence of the plaintiff's symptoms. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986) (stating that "[w]ithout such an explanation, it is simply impossible to tell whether there was substantial evidence to support the determination"); *Beckman v. Apfel*, C.A. No. WMN-99-3696, 2000 WL 1916316, at *9 (D. Md. 2000) (finding that where there is "ample factual support in the record" for a particular listing, the ALJ should perform a listing analysis).

> Listing 1.05 provides in pertinent part:
>
> 1.05 Amputation (due to any cause).
> ***
> B. One or both lower extremities at or above the tarsal region, with stump complications resulting in medical inability to use a prosthetic device to ambulate effectively, as defined in 1.00B2b, which have lasted or are expected to last for at least 12 months . . . .

20 C.F.R. pt. 404, subpt. P, app. 1, §1.05. "Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device that limits functioning of both upper extremities." *Id.* §1.00(B)(2)(b).

The amputation of the lower part of the plaintiff's leg was on March 17, 2007. Treatment notes on May 3, 2007, and July 30, 2007, observe that the plaintiff was using a walker (Tr. 407, 513). The plaintiff reported to Dr. Patel on August 9, 2007, that he used a walker (Tr. 516, 518). The ALJ contends that after August 2007, no doctor explicitly said that the plaintiff needed a walker, and thus the plaintiff does not meet the requisite 12 months. However, as pointed out by the plaintiff, there is ample evidence in the record such that the ALJ should have at least considered this listing. There is no evidence that the plaintiff did *not* require the use of a walker until he was discharged from vocational rehabilitation on June 20, 2008, at which time he was using a cane (Tr. 688). The Commissioner's *post hoc* rationalizations for why the plaintiff does not meet the listing are

12

inappropriate. Without an explanation from the ALJ, it is impossible to tell whether substantial evidence supports a finding that the plaintiff does not meet this listing. *See Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003) ("[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ.").

The plaintiff further argues that the ALJ should have considered Listing 9.08 (Diabetes mellitus), which provides as follows, in pertinent part:

> 9.08 Diabetes mellitus. With:
>
> A.   Neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C) . . . .

20 C.F.R. pt. 404, subpt. P, app. 1, § 9.08.  "Persistent disorganization of motor function" is defined by the regulations as "paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral, cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combinations...." 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.00(C).  The ALJ found that the plaintiff's diabetic neuropathy was a severe impairment and noted the plaintiff's testimony that his right foot, leg, and hands get numb, and he has difficulty bathing, buttoning his shirt, putting on his belt, and tying his shoes (Tr. 14-15).  The plaintiff's difficulties with ambulation are set out above.  As will be discussed below, the ALJ did not properly evaluate the plaintiff's credibility.  Given the foregoing evidence, the ALJ should be directed upon remand to consider Listings 1.05 and 9.08 in the analysis at the third step of the sequential evaluation.

### Opinion Evidence

The plaintiff next argues that the ALJ failed to properly consider the opinions of his primary treating physician, Dr. Price, and consultative examiner Dr. Patel.  The

regulations require that all medical opinions in a case be considered, 20 C.F.R. § 416.927(b), and, unless a treating source's opinion is given controlling weight, weighed according to the following non-exclusive list: (1) the length of the treatment relationship and the frequency of the examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 416.927(d)(2)-(5). *See also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). However, statements that a patient is "disabled," "unable to work," meets the listing requirements, or similar assertions are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-5p, 1996 WL 374183, at *5.

The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case. *See* 20 C.F.R. § 416.927(d)(2); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Social Security Ruling 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. 1996 WL 374188, at *5. As stated in Ruling 96-2p:

> [A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R. § 416.927]. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Id.* at *4.

14

On November 13, 2007, Dr. Price completed a form stating that the plaintiff was unable to work because of his amputation, but he thought that the plaintiff would benefit from vocational rehabilitation services. Dr. Price noted the plaintiff's left leg amputation and diagnoses of diabetes, hypothyrodism, hypertension, and diabetic neuropathy. He further stated the plaintiff would not be able to complete tasks in a timely manner and would not be able to meet the minimum standards of employment such as productivity, punctuality, and reliability (Tr. 652). The ALJ stated she did "not give much weight" to Dr. Price's opinion and further stated:

> While Dr. Price has treated claimant on occasion, the record evidence does not support the conclusion that claimant was as limited as Dr. Price believed during the entire closed period. Also, determinations on disability are reserved to the Commissioner pursuant to SSR 96-5p.

(Tr. 15-16).

On August 9, 2007, Dr. Patel performed a consultative examination of the plaintiff in connection with his application for benefits. Dr. Patel noted that the plaintiff had a prosthesis in place but still used a walker and concluded that "this significantly disables him to do any type of work and definitely needs (sic) disability. . . and he cannot be trained for any work because of his amputation" (Tr. 516-18). The ALJ stated she did "not give much weight" to Dr. Patel's opinion and explained, "Dr. Patel saw claimant once, a few months after his amputation and had no knowledge of claimant's significant improvements" (Tr. 15).

As argued by the plaintiff, the ALJ failed to acknowledge that the opinions of Drs. Price and Patel were consistent with each other. Further, while the ultimate question of disability is reserved to the Commissioner, Dr. Price also gave his opinion on the nature and severity of the plaintiff's impairments, finding he would not be able to complete tasks in a timely manner and would not be able to meet the minimum standards of employability

15

such as productivity, punctuality, and reliability. The record shows that Dr. Price treated the plaintiff for several years, and the ALJ failed to indicate what evidence she finds does not support his opinion. With regard to Dr. Patel, the ALJ made one conclusory statement regarding his opinion, but did not explain what she meant by the plaintiff's "significant improvements" (*see* Tr. 15). As pointed out by the plaintiff, by amending his requested period of disability to a closed period from February 25, 2007, to June 1, 2008, he concedes that he had a period of improvement beginning with his graduation from Vocational Rehabilitation in June 2008. The ALJ, however, does not articulate when she found the plaintiff had reached significant improvement.

Based upon the foregoing, upon remand, the ALJ should be instructed to evaluate the opinions in accordance with the foregoing.

**Credibility**

The plaintiff next argues that the ALJ failed to make a proper credibility determination. This court agrees. The Fourth Circuit Court of Appeals has stated as follows with regard to the analysis of a claimant's subjective complaints:

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. . . . It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig*, 76 F.3d at 593, 595. A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence"

is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." 1996 WL 374186, at *4. Furthermore, it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." *Id.*

The factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

(1) the individual's daily activities;

(2) the location, duration, frequency, and intensity of the individual's pain or other symptoms;

(3) factors that precipitate and aggravate the symptoms;

(4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

(5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

(6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

(7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *3.

The ALJ's credibility finding was as follows:

The claimant testified that in February 2007 he burned the bottom of his left foot on a space heater. He did not feel the burn due to significant peripheral neuropathy. His left leg developed gangrene and had to be amputated. The below the knee prosthesis was in place but due to his diabetes he had

17

> problems with the healing process. Thereafter, the claimant needed several prosthesis adjustments and was advised to get an entire new prosthesis. He has trouble walking, and he can only stand three to five hours, and he has problems getting up from a seated position. He said his right foot, leg and hands gets numb. He has some difficulty with bathing, buttoning his shirt, putting on his belt and tying his shoes. The claimant testified that he has been a minister for 17 years and is volunteering at Divinity Care Homeless Shelter. He has now graduated from Vocational Rehabilitation and he and his caseworker are trying to find him a job.
>
> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(Tr. 14-15). The only other specific mention of the plaintiff's testimony was as follows, "The claimant testified that he is now seeking employment since graduating from Vocational Rehabilitation" (Tr. 16).

As argued by the plaintiff, the credibility finding must be grounded in the evidence of record and articulated in the decision. Here, the ALJ has failed to provide any reasoning for her finding that the plaintiff's testimony was not fully credible. The Commissioner argues that it is "reasonable for this Court to infer that the ALJ questioned Plaintiff's credibility to the extent he claimed limitations beyond what was supported by the medical evidence of record" (def. brief at 20). Clearly, the court should not have to infer the reasons for an ALJ's credibility finding. Furthermore, "a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity . . . ." *Craig*, 76 F.3d at 595. *See Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005); 20 C.F.R. § 404.1529(c)(2) ("We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your

18

statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."); SSR 96-7p, 1996 WL 374186, at *6 ("[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the adjudicator must consider in assessing an individual's credibility and must be considered in the context of all the evidence.").

Based upon the foregoing, upon remand, the ALJ should be instructed to articulate the reasoning for the credibility finding in accordance with the above cited law.

***Residual Functional Capacity***

The plaintiff further argues that the ALJ's RFC determination was inadequate. Social Security Ruling 96-8p, 1996 WL 374184, provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Id.* at *7 (footnote omitted). Further, "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.*

The ALJ's found as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except the claimant can perform tasks requiring

19

> frequent, but not constant, bilateral hand and finger
> manipulation.

(Tr. 14).  The plaintiff argues that the ALJ erred by failing to incorporate the limitations caused by his difficulty ambulating, his need to use handheld assistive devices while walking, and his need for frequent change in position.  The plaintiff's difficulty ambulating and his need for a walker - and later a cane - are well documented in the record.  The ALJ specifically noted that the South Carolina Vocational Rehabilitation discharge summary, dated June 20, 2008, found the plaintiff "currently needs accommodations for no kneeling, crouching, climbing, and crawling with frequent position changes between sitting, standing, and walking" (Tr. 15; *see* Tr. 686, 691).  However, the ALJ did not include the need for frequent change in position in her RFC finding.  Furthermore, as discussed above, the ALJ failed to properly consider the plaintiff's subjective testimony, which included testimony that his right foot, leg, and hands get numb.  Accordingly, upon remand, the ALJ should be instructed to re-evaluate the plaintiff's RFC in accordance with the foregoing and to articulate her reasons for accepting or not accepting the above functional limitations.

### *SSR 00-4p*

> Lastly, the plaintiff argues that the ALJ erred in failing to comply with SSR 00-

4p, which provides in pertinent part:

> When a [vocational expert ("VE")] . . . provides evidence about
> the requirements of a job or occupation, the adjudicator has an
> affirmative responsibility to ask about any possible conflict
> between that VE . . . evidence and information provided in the
> [Dictionary of Occupational Titles ("DOT")].  In these situations,
> the adjudicator will:
>
> Ask the VE . . . if the evidence he or she has provided conflicts
> with information provided in the DOT; and
>
> If the VE's . . . evidence appears to conflict with the DOT, the
> adjudicator will obtain a reasonable explanation for the
> apparent conflict.

> When vocational evidence provided by a VE . . . is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE . . . evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

SSR 00-4p, 2000 WL 1898704, at *4.

The plaintiff argues that the ALJ erred in failing to question the vocational expert regarding the implications of the sit/stand option on the occupational base, which created a potential conflict between the expert's testimony and the *DOT*. In response, the Commissioner argues that because the ALJ did not find that the plaintiff's allegation that he had to frequently change positions was supported by the record, she was not required to include that limitation in her hypothetical question to the vocational expert (def. brief at 14). However, no such credibility finding is cited in the decision. The ALJ specifically noted that the South Carolina Vocational Rehabilitation discharge summary, dated June 20, 2008, found the plaintiff "currently needs accommodations for no kneeling, crouching, climbing, and crawling with frequent position changes between sitting, standing, and walking" (Tr. 15; *see* Tr. 686, 691). The ALJ did not incorporate this need for frequent change in position in her hypothetical question to the vocational expert, nor state her reasons for not doing so, and she did not question the expert regarding the implications of such on the occupational base. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) ("[I]n order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."). Further, the ALJ never asked the vocational expert whether or not his testimony was consistent with the *DOT* as required by SSR 00-4p.

Based upon the foregoing, upon remand, the ALJ should be instructed to comply with SSR 00-4p in her questioning of the vocational expert.

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, this court recommends that the Commissioner's decision be reversed under sentence four of 42 U.S.C. § 405(g), with a remand of the cause to the Commissioner for further proceedings as discussed above.  Should the district court adopt this court's recommendation, the parties are reminded that the entire record, including the medical evidence submitted after the ALJ's September 23, 2009, decision, will be before the ALJ upon remand.


s/ Kevin F. McDonald
United States Magistrate Judge

December 9, 2011
Greenville, South Carolina

22